FILED
2013 Jul-22 PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
2013 JUL 22 P 3:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

CLARK MEMORIALS OF ALABAMA, INC., §

Plaintiff, §

v. § Case No.: CV-13-U-1356-S

SCI ALABAMA FUNERAL SERVICES, LLC d/b/a ELMWOOD CEMETERY AND MAUSOLEUM; SERVICE CORPORATION INTERNATIONAL; TIMOTHY W. RODGERS; §

Defendants. §

**COMPLAINT**

Plaintiff, Clark Memorials of Alabama, Inc., through its undersigned attorneys, states as follows:

## I. Nature of Action

1. Plaintiff brings this action under federal antitrust laws and supplemental state laws to obtain injunctive relief and recover damages arising from Defendants' restraint of trade and competition in the installation of monument and marker industry in the metropolitan area of Birmingham, Alabama. Plaintiff alleges that Defendants have adopted exclusive installation policies at Elmwood Cemetery as part of a scheme of willful acquisition or maintenance of monopoly power. By imposing these policies,

Defendants have ruthlessly sought to interfere with Plaintiff's present and prospective business relationships with its customers and to destroy the business and good name of Plaintiff.

## II. Jurisdiction and Venue

2. The United States District Court for the Northern District of Alabama has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26) and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). The federal and state law claims arise from the same events and transactions, involve substantially identical issues of fact and law and are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over Defendants because, among other things, Defendants engage in systematic and regular business in the United States, including in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

4. Venue is proper in this judicial district under 15 U.S.C. § 15, 15 U.S.C. § 22 and 28 U.S.C. § 1391.

## III. Parties

5. Plaintiff, Clark Memorials of Alabama, Inc. (hereinafter "Clark Memorials"), is an Alabama corporation, organized and existing under the laws of Alabama. Clark Memorials is a monument retailer engaged in the general sale and installation of cemetery monuments, memorials and foundations with its principal place of business located at 308 6th Avenue Southwest in Birmingham, Alabama.

6. Defendant SCI Alabama Funeral Services, LLC d/b/a Elmwood Cemetery and Mausoleum (hereinafter "SCI Alabama") is an Alabama limited liability corporation. Among other businesses, SCI Alabama owns and operates cemeteries in the Birmingham metropolitan area, including Elmwood Cemetery. Elmwood Cemetery is located at 600 Martin Luther King Jr. Drive, Birmingham, Alabama. Elmwood Cemetery is located directly across the street from Clark Memorials.

7. Defendant Service Corporation International (hereinafter "SCI") is a foreign corporation which at all times pertinent hereto was doing business in Jefferson County, Alabama. Defendant SCI is the parent corporation of SCI Alabama. Cemetery location managers, under the direction of the divisional management, receive direction, support and resources from SCI's headquarters in Houston, Texas. SCI Alabama patterns its operations from a business model created

and promulgated by SCI. (SCI Alabama and SCI will be jointly referred to as "the SCI Defendants.")

8. Defendant Timothy W. Rodgers (hereinafter "Rodgers") is a resident of Shelby County, Alabama. Rodgers is the Market Director Central Alabama for SCI Alabama. His office is at Elmwood Cemetery.

## IV. Factual Background

9. Clark Memorials was founded in 1898. Clark Memorials has been owned and operated by the same family for about 50 years. For 115 years, Clark Memorials has been engaged in the business of selling and installing granite, marble and bronze monuments and markers for cemeteries. Monuments are generally upright and consist of granite or marble. A marker on the other hand is generally flat and is made of stone and/or bronze. Monuments and markers are also referred to as memorials. In addition to selling memorial products, Clark Memorials also installs the memorials on the cemetery lot. Clark Memorials' principal office is located across the street from Elmwood Cemetery in Birmingham.

10. SCI was founded by Robert Waltrip in 1962. Today, SCI is North America's largest provider of funeral and cemetery services. As of December 31, 2012, SCI operated 1,437 funeral service locations and 374 cemeteries in North

America, which are diversified across 43 states. At the end of 2012, SCI, through its wholly-owned subsidiary SCI Alabama, owned nine cemeteries in Alabama.

11. Through the years, SCI has focused its acquisitions on heritage properties, businesses known most commonly by the names of founding families. Part of its business strategy is to continue to operate the businesses under the former heritage names. In 1987, SCI acquired Elmwood Cemetery.

12. Established in 1900, Elmwood Cemetery is one of four cemeteries now owned by SCI Alabama in the Birmingham metropolitan area. The cemetery compromises approximately 500 acres, provides the final resting place for over 200,000 persons and as of 2002 was ranked as the 12th largest cemetery in the United States.

13. SCI, through its wholly-owned subsidiary SCI Alabama, sells cemetery interment rights at Elmwood Cemetery, including developed lots, lawn crypts, and mausoleum spaces. The SCI Defendants also sell cemetery-related merchandise and services, including stone monuments and markers, bronze memorials, merchandise installations and burial openings and closings.

14. Clark Memorials enters into written contracts with its customers for the sale, installation and even cleaning of monuments and markers.

15. Clark Memorials has installed at least 10,000 monuments in Elmwood Cemetery. In 2012 alone, Clark Memorials averaged selling a memorial for Elmwood Cemetery every three days.

16. After meeting with a customer and designing the memorial, a representative of Clark Memorials will place the order with a quarry or bronze company. It generally takes three to four months for a product to be completed.

17. Once the product had been shipped to Clark Memorials, arrangements were made with Elmwood Cemetery for the monument or marker to be installed by Clark Memorials.

18. Prior to June 20, 2013, Clark Memorials installed the monument or marker by preparing a foundation. The foundation is prepared by digging a hole where the monument or marker rests, filling the hole with Quikrete® Ready to Use Mix, then placing the monument or marker upon the foundation.

19. Clark Memorials provides a written warranty to its customers which guarantees both the quality of the memorial and its installation.

20. Prior to Elmwood's acquisition by SCI, Elmwood's previous owner charged Clark Memorials a $65 fee to flag the site for the installation of monuments and markers specified by a family.

21. In 2013, the SCI Defendants were charging Clark Memorials $195 for flagging the location of each monument and/or marker. Where a family with a double plot purchased one monument and two markers, the SCI Defendants charged Clark Memorials $195 x 3 = $585.

22. Clark Memorials charged this fee to its customer as part of its customer billing.

23. Once the monument or marker arrived at its office, Clark Memorials workers submitted to Defendants a Memorial Authorization and Inspection Form notifying Defendants of the name of the deceased, the grave description and description of the monument or marker to be installed.

24. After an Elmwood employee flagged the location(s) and Clark Memorials pays the $195 fee, Clark Memorials would come onto the cemetery property, prepare the foundation and install its customer's chosen memorial.

25. On June 20, 2013, the Defendants changed their policies regarding Clark Memorials and its customers. On that day, the SCI Defendants, through their Market Director for Central Alabama, Defendant Rodgers, announced that Clark Memorials' days of using Elmwood Cemetery as its showplace for selling many of its monuments and markers "were over." Defendant Rodgers presented the President of Clark Memorials, Charles Tourney, with a letter banning Clark Memorials from Elmwood

Cemetery. The pretextual reason for the banning was that Clark Memorials had violated Elmwood Cemetery's rules and regulations. Plaintiff avers that the true reason for banning Clark Memorials from Elmwood Cemetery is to acquire Clark Memorials' customers, to exclude competition in the installation of memorials market and to drive Clark Memorials out of business.

26. Defendant Rodgers, while acting within the line and scope of his employment with Defendant SCI Alabama and on behalf of both SCI Defendants, has demanded that Clark Memorial drop off its customers' memorials at an area just inside the gates of Elmwood Cemetery. Defendant Rodgers reported to Clark Memorials that none of its memorials will be installed at Elmwood Cemetery by the SCI Defendants until installation fees are paid.

27. In June of 2013, Defendants announced that it was going to start charging Clark Memorials for installation fees. The fees were $300 for each footmarker and $500 for each monument.

28. On July 2, 2013, Defendants informed Clark Memorials that these installation fees were being increased to $0.65 per square inch, such that installation of a typical 4-foot monument with a 5-foot base will cost $780 and the installation of a typical monument with a 10-foot base will cost $1,560.

29. As of the date of the filing of this complaint, Clark Memorials has approximately 28 contracts involving customers who have ordered memorials which have yet to be installed at Elmwood Cemetery.

30. Six of these contracts involve memorials already delivered to Clark Memorials and are available for immediate installation.

31. The Defendants' exclusive installation policies prohibit Plaintiff from competing in the memorials installation market.

32. The exclusive installation policies limit consumer choice and substantially deprive the customer of the ability to utilize and compare prices for such installation services.

33. Because Defendant SCI Alabama does not publicize its installation charges, a consumer is less informed to insure that competitive prices are charged for installation of memorials.

**Interstate Commerce**

34. Defendants transact a major portion of their business in interstate commerce, and the acts and transactions alleged herein involve and affect a substantial amount of interstate and trade.

35. Defendants facilitate the flow of interstate trade and commerce.

36. There is a constant flow of granite and bronze monuments and memorials from other states into Alabama. Most granite and bronze monuments and memorials are manufactured outside of and transported into Alabama.

37. Annual sales of granite, bronze and other products and materials to retailers and cemeteries in the continental United States in recent years totaled in the millions of dollars per year, a substantial part of which was sold and shipped in interstate commerce to purchasers located throughout the United States.

38. The grave monuments and memorials sold and installed by Plaintiff and Defendants are manufactured outside of and are imported into Alabama by rail, truck, boat and private carrier from the states of Vermont and Georgia and other states and foreign countries.

**Relevant Market and Product Service**

39. The SCI Defendants are direct competitors of Clark Memorials for memorial installation services.

40. The relevant geographic market is the metropolitan Birmingham area.

41. The relevant product service market is foundation preparation and the installation of memorials market.

**Anticompetitive Conduct**

42. Beginning in June of 2013, the Defendants have refused to allow Clark Memorials to prepare foundations and install monuments and markers at Elmwood Cemetery.

43. Beginning at some time prior to June 2013, Defendants began informing consumers that if they choose to purchase a monument or memorial from an independent memorial dealer, they will be charged installation fees.

44. The effect of the practices of Defendants described herein is to:

(a) deny to the family of a deceased interred at Elmwood a competitive choice in the purchase and installation of a monument or memorial and prevent families from memorializing the last resting place of their loved ones at a cost within their economic means;

(b) prevent Plaintiff from meeting the obligations of its contracts, including its warranties, with its customers;

(c) lessen the quality of the foundation monuments and markers purchased by consumers as the quality of such service and products provided by the SCI Defendants is inferior to that provided by Plaintiff;

(d) drive out competition by Plaintiff and other memorial companies and to exploit their dominant position in the installation of memorials market in order to then monopolize the sale of memorials market;

(e) prevent Plaintiff from installing monuments or memorials chosen by Plaintiff's customers;

(f) prevent Plaintiff from performing warranty work on memorials and foundations at Elmwood; and

(g) prevent Plaintiff from selling monuments or memorials as customers have been steered away by Defendants' imposition of onerous installation fees.

45. As a direct and proximate result of Defendants' conduct,

(a) Plaintiff has lost monies because of being prevented from preparing the foundations of its customer's memorials;

(b) Plaintiff is losing sales of grave monuments and memorials;

(c) Plaintiff is being charged exorbitant fees to have its customers' memorials installed;

(d) Plaintiff is suffering diminution in the value of its business; and

(e) Plaintiff is suffering loss of good will and reputation of its business.

46. As a direct proximate result of Defendants' conduct, the public is deprived of free and open competition in the installation and purchase of memorials at Elmwood Cemetery. The public is being forced to accept memorial foundations of inferior quality. The policies of Defendants restrict competition and will ultimately result in higher prices for consumers.

**COUNT ONE**
**SHERMAN ACT - SECTION TWO**

47. Plaintiff realleges all allegations contained in this Complaint as if fully set forth herein.

48. The SCI Defendants have the power to exclude competition in the installation of memorials market at Elmwood Cemetery. The SCI Defendants are the owners of the cemetery. Despite the public nature of a cemetery and a burial owner's right to install a memorial on his or her lot, the SCI Defendants can and did use the pretextual excuse of violating cemetery rules to restrain competition.

49. Under the Defendants' exclusive installation policies, independent memorial dealers, including the Plaintiff, can no longer prepare foundations for monuments and markers which these independent dealers sell to their customers.

50. Under the Defendants' exclusive installation policies, Clark Memorials can no longer install at Elmwood Cemetery the memorials which it has sold.

51. The SCI Defendants are now preparing all foundations for monuments and markers at Elmwood Cemetery and are installing all memorials sold by Clark Memorials.

52. The Defendants' exclusive installation policies constitute an illegal tying arrangement which restrains competition. The Defendants have wrongfully tied the sale of cemetery lots to the preparation of foundations and the installation of monuments and markers.

53. By implementing exclusive installation policies, the SCI Defendants are exploiting their control over the tying product (the burial lot) to force the buyer into the purchase of a tied service (the installation of memorials).

54. The SCI Defendants have used its monopoly power to foreclose competition and gain a competitive advantage over Clark Memorials.

55. The Defendants' adoption of exclusive installation policies is part of a scheme of willful acquisition or maintenance of monopoly power.

56. Defendants have no valid business justifications for their actions.

57. As a consequence of Defendants' illegal conduct, Plaintiff has suffered and will continue to suffer financial loss and has been injured and will continue to be injured.

## COUNT TWO
## ALABAMA ANTITRUST ACT

58. Plaintiff realleges all allegations contained in this Complaint as if fully set forth herein.

59. Defendants' conduct has occurred in the State of Alabama.

60. Defendants have acted in violation of the Antitrust laws of the State of Alabama. Ala. Code, 1975 §§ 6-5-60 and 8-10-1, *et seq*.

61. Defendants have caused Plaintiff to suffer financial loss in that SCI Defendants, with its monopolistic market strength, have attempted to and have restrained the freedom of trade. Defendants have implemented exclusive installation policies in an attempt to monopolize the installation of memorials market and ultimately monopolize the sale of memorials market, in an attempt to destroy the business of Clark Memorials.

62. As a consequence of Defendants' illegal conduct, Plaintiff has suffered financial loss and has been injured.

## COUNT THREE
## INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

63. Plaintiff realleges all allegations contained in this Complaint as if fully set forth herein.

64. Plaintiff has approximately 28 contracts for the purchase of markers, monuments or memorials with customers who own cemetery lots at Elmwood Cemetery.

65. Defendants each knew of the contracts between Plaintiff and its customers.

66. Defendants have separately and/or collectively intentionally and wrongfully and without lawful justification interfered with Plaintiff's contracts with its customers and continues to do so.

67. Defendants' actions have caused and are causing and, if unabated, will continue to cause, immediate, great and irreparable injury to Plaintiff.

68. As a direct and proximate result of Defendants' conduct causing intentional interference with Plaintiff's contractual relationships, Plaintiff has been harmed.

69. By reason of the foregoing interference with Plaintiff's contracts, Plaintiff is entitled to an injunction preventing Defendants from engaging in the conduct, practices and activities described in this Complaint.

70. Although Plaintiff believes that there is no adequate remedy at law for the irreparable harm, loss and damage referred to in this Complaint, it alleges in the

alternative that, by reason of Defendants' interference with Plaintiff's contractual relationships, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT FOUR
## INTERFERENCE WITH BUSINESS RELATIONSHIPS

71. Plaintiff realleges all allegations contained in this Complaint as if fully set forth herein.

72. Plaintiff has business relationships with potential customers who own cemetery lots at Elmwood Cemetery and who desire to purchase and install markers, monuments or memorials for those lots.

73. Defendants have separately and/or collectively intentionally and wrongfully and without lawful justification interfered with Plaintiff's business relationships with its potential customers and continues to do so.

74. Defendants' actions have caused and are causing and, if unabated, will continue to cause, immediate, great and irreparable injury to Plaintiff.

75. As a direct and proximate result of Defendants' conduct causing intentional interference with Plaintiff's business relationships, Plaintiff has been harmed.

76. By reason of the foregoing interference with Plaintiff's business relationships, Plaintiff is entitled to an injunction preventing Defendants from engaging in the conduct, practices and activities described in this Complaint.

77. Although Plaintiff believes that there is no adequate remedy at law for the irreparable harm, loss and damage referred to in this Complaint, it alleges in the alternative that, by reason of Defendants' interference with Plaintiff's business relationships, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT FIVE**
**INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**

78. Plaintiff realleges all allegations contained in this Complaint as if fully set forth herein.

79. Due to the nature of Plaintiff's business, Clark Memorials has a large number of prospective customers. Plaintiff's business is largely derived from the presence of its monuments in Elmwood Cemetery and is dependent upon the reasonable likelihood of future business of those who purchase lots at Elmwood Cemetery or on the repeat business of families who have purchased monuments from Clark Memorials for use at Elmwood Cemetery.

80. Defendants know of the prospective relationships because Defendants maintain a comprehensive customer list of those who owns lots at Elmwood

Cemetery, and Defendants are aware of who has purchased Clark Memorial monuments.

81. Defendants intentionally and improperly interfered with the prospective relationship by its illegal restraint on trade and by statements made by Rodgers.

82. The interference will cause prospective customers not to enter into a business relationship with Plaintiff and have Plaintiff procure and install memorials at Elmwood Cemetery.

83. Defendants' interference was done with the predominant purpose of financially harming or destroying Plaintiff's competitive business, was made with willful and wanton disregard to the rights of Plaintiff and was specifically directed at Plaintiff.

84. As a direct and proximate result of Defendants' conduct causing intentional interference with Plaintiff's business relationships, Plaintiff has been harmed.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Clark Memorials of Alabama, Inc., prays for judgment in its favor, and against Defendants SCI Alabama Funeral Services, LLC

d/b/a Elmwood Cemetery and Mausoleum, Service Corporation International and Timothy W. Rodgers, jointly and severally, as follows:

(a) award actual damages sustained by the Plaintiff in an amount according to proof at trial;

(b) award compensatory damages sustained by the Plaintiff against the Defendants;

(c) award reasonable attorney's fees;

(d) enjoin, temporarily until trial and permanently thereafter, all violations of the antitrust laws of Defendants and each of them;

(e) enjoin, temporarily until trial and permanently thereafter, from prohibiting Plaintiff from entering upon cemetery property to conduct lawful business and enjoin the fostering of such prohibition;

(f) award to the Plaintiff three times the amount of damages determined to have been sustained;

(g) prejudgment interest;

(h) punitive damages;

(i) $500 for each violation as required by Ala. Code, 1975 § 6-5-60;

(j) such other and different relief as justice may require.

s/ Leah O. Taylor
Leah O. Taylor
Bar ID ASB-9871-L75E

s/ Rhonda P. Chambers
Rhonda P. Chambers
Bar ID ASB-0972-B57R

Attorneys for Plaintiff
TAYLOR & TAYLOR
2130 Highland Avenue
Birmingham, Alabama 35205
Telephone: (205) 558-2800
Fax: (205) 558-2860

E-mail: lotaylor@taylorlawyers.com
rpchambers@taylorlawyers.com

PLEASE SERVE VIA CERTIFIED MAIL

Defendants' Addresses:

SCI ALABAMA FUNERAL SERVICES, LLC
c/o CSC Lawyers Incorporating Svc, Inc.
150 South Perry Street
Montgomery, AL 36104

SERVICE CORPORATION INTERNATIONAL
c/o Tom Ryan
President and Chief Executive Officer
1929 Allen Parkway
Houston, TX 77019

Timothy W. Rodgers
1202 Grande View Lane
Maylene, AL 35114